### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

John Paul Raymond Bye,

Case No. 25-CV-4748-KMM-EMB

Plaintiff,

v.

**AMENDED COMPLAINT**

Itasca County Jail Administration,
Mental Health Medical Staff;
Mental & Medical Staff Employer;
Shawn Racine, *Captain*;
Garret Smith, *Lieutenant*;
Private Employer of Itasca County Jail Medical
Staff;
Itasca County Jail Nurse Practitioner;
Paula Unknown, Itasca County Jail Nurse; and
Ashley Unknown, Itasca County Jail Mental
Health Specialist,

Defendants.

RECEIVED
BY MAIL

MAY 0 4 2026

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

I.   **Jurisdiction & Venue:** Under 28 U.S.C. §§ 1331 and 1983 in the United States of America, Eighth Circuit, Minnesota Ninth District.

II.  **Plaintiff(s):**

1. John Paul Raymond Bye is, and at all times mentioned, was incarcerated at the Itasca County Jail.

III. **Defendant(s):**

1. Itasca County Jail Administration, Mental Health Medical Staff;

2. Mental & Medical Staff Employer;

3. Shawn Racine, *Captain*;

4. Garret Smith, *Lieutenant*;

5. Private Employer of Itasca County Jail Medical Staff;

6. Itasca County Jail Nurse Practitioner;

7. Paula Unknown, Itasca County Jail Nurse; and

8. Ashley Unknown, Itasca County Jail Mental Health Specialist.

IV.  **Facts:**

1. Plaintiff was arrested and transferred to Itasca County Jail on the 14th day of August, 2025.

2. During the subsequent booking process, Plaintiff was screened for medical and mental health needs. Through said process, the jail was informed that Plaintiff


SCANNED
MAY 0 4 2026
U.S. DISTRICT COURT ST. PAUL

suffered from persistent depression, general anxiety, and Post Traumatic Stress Disorder, and was treated at Miller-Dwan (Essentia Health-Duluth) in Duluth, Minnesota, in 2017 for the first of several suicide attempts.

3. Approximately one week later, Plaintiff made verbal complaints to Mental Health Specialist Ashley and medical staff concerning his suffering from high anxiety, intense depression, and lack of sleep.

4. Said complaint resulted in a referral from medical staff to Mental Health Staff who then recommended coping skills, reading, and exercise, all of which Plaintiff followed.

5. Due to persistence of symptoms, Plaintiff made written requests, through the kiosk, to medical staff asking for further treatment.

6. Medical staff first required Plaintiff to complete a sleep tracking log before any treatment would be provided, as indicated by a kiosk response on April 9, 2025.

7. Plaintiff completed said sleep tracking log, which showed an approximate total of three to five hours of sleep per night, which Plaintiff asserted his belief to be caused by untreated anxiety.

8. The nurse practitioner prescribed an anti-depressant to Plaintiff without informing him what the medication was, what it was used for, or what potential side-effects might be experienced. Had Plaintiff known the medication was Prozac, he would have refused to take it, given his past experience with the medication. Plaintiff understands that Prozac is an antidepressant medication, not an anti-anxiety medication.

9. No treatment was provided to Plaintiff for aforementioned high anxiety and lack of sleep as of September 26, 2025.

10. Plaintiff informed both the mental health and medical staff that the depression medication, Prozac, was ineffective and requested a change in treatment be made.

11. Medical and mental health staff then advised Plaintiff that no medication would be provided for his anxiety and lack of sleep, and that he should "learn coping skills."

12. By this time, Plaintiff was already exercising, reading self-help material, and studying the Bible daily, which were collectively still ineffective.

13. After meeting with Mental Health multiple times and requesting medication changes, Plaintiff asked Medical Staff, via the kiosk, to consider returning to a previously successful medication that was provided to him in Minnesota

Correctional Facility, Faribault.

14. Medical Staff informed Plaintiff that no such medication changes would be made without a mental health referral, which had already been obtained.

15. On October 2, 2025, Plaintiff was administered Mirtazapine at a "half dose", again without informing him what the medication was, what it was used for, or what potential side-effects might be experienced. Plaintiff understands Mirtazapine to be an antidepressant, not an anti-anxiety medication.

16. Plaintiff was subsequently prescribed Sertraline, replacing Prozac, for his depression, again without informing him what the medication was, what it was used for, or what potential side-effects might be experienced.

17. Plaintiff subsequently reported that these medications remained ineffective at treating his anxiety.

18. Plaintiff subsequently made verbal complaints to staff concerning his anxiety, and Medical Staff informed Plaintiff that the nurse practitioner would review his complaints.

19. Medical Staff Nurse Paula subsequently came to Plaintiff's living unit and advised him that no changes to his medication would be made and that he should consider purchasing melatonin from the canteen.

20. Plaintiff subsequently complained, via the kiosk, about lack of medication or medication change, in addition to being told to purchase melatonin.

21. On October 18, 2025, Medical Staff Nurse Paula subsequently returned to Plaintiff's unit. Plaintiff asked if staff had received his message via the kiosk, she responded by interrogating him, "Are we playing a game?" She asked this multiple times, raising her voice, and causing Plaintiff embarrassment and shame.

22. Plaintiff subsequently, again, messaged staff via the kiosk, regarding his concerns about his anxiety being untreated.

23. On October 23, 2025, Plaintiff wrote a grievance concerning staff conduct and his ongoing lack of treatment for his anxiety.

24. Jail Administration subsequently responded to Plaintiff's written grievance, informing Plaintiff that this was a medical issue, and that if he had a "legitimate" concern it could be addressed with a grievance.

25. On October 24, 2025, Plaintiff contacted Mental Health Staff again, via the kiosk, explaining that he was experiencing suicidal ideations.

26. On October 25, 2025, staff visited Plaintiff and asked if he could wait until they returned later in the week. Plaintiff reluctantly agreed, despite his yet-ongoing lack of treatment.

27. On October 27, 2025, Mental Health Staff returned to the unit for the weekly visit, but ignored Plaintiff, and dismissed him without following up as discussed on October 25, 2025.

28. Plaintiff subsequently wrote another grievance, with reference to his previous grievance, and requested information on how to proceed further with the process of his grievance. He was informed that his grievance was dismissed due to lack of legitimacy.

29. On October 27, 2025, Plaintiff's second grievance is likewise dismissed. Nurse practitioner meets with Plaintiff subsequently and informs him that records are needed from the Minnesota Correctional Facility in Faribault would be needed before he could be given previous medication.

30. Plaintiff explains to the nurse practitioner that he believes the current medications are making his symptoms worse. Nurse practitioner has Plaintiff continue the medication, despite his indication, informing him that he hasn't been on it long enough to experience the positive effects.

31. On November 9, 2025, nurse practitioner increases Plaintiff to a full dose of Mirtazapine, but continues to ignore Plaintiff's grievances regarding nurse conduct.

32. Subsequently, Medical Staff informs Plaintiff that no medical records exist from the Minnesota Correctional Facility in Faribault, despite Plaintiff having been incarcerated there less than a year ago.

33. On November 11, 2025, Plaintiff requests that Medical Staff make contact with Lakeview Behavioral Health, where he last received treatment, in order to obtain records. This request is ignored, and nurse practitioner subsequently informs Plaintiff no changes will be made in his medication.

34. Plaintiff subsequently requests a copy of all communications between himself and the staff via the kiosk. Jail administration informs Plaintiff that he must wait until he is released or must have his attorney request the information, even though Plaintiff indicates that he is self-represented.

35. Plaintiff attempts to make another written grievance directly to Medical Staff. Medical Staff tells Plaintiff that it should be referred to "Sargeant" since it is a

"grievance issue", not a medical issue.

36. Plaintiff requests the names of all included individuals. Jail Administration denies this request of information, and again refers Plaintiff to speak to his attorney, despite the fact that he remains self-represented.

37. On November 11, 2025, Plaintiff again reached out to Mental Health Staff concerning being ignored on the previous visit and his persistent and worsening symptoms he is experiencing.

38. On November 14, 2025, Mental Health staff visited Plaintiff in his unit, where he informed them that he was experiencing overwhelming suicidal ideation, and had begun making plans for his suicide as of two days prior to the visit. Mental Health staff advises Plaintiff to explore self-help material and informs him there is nothing that can be done.

39. On November 25, 2025, Plaintiff attends his Department of Corrections hearing and is told he will be allowed to attend Minnesota Adult and Teen Challenge. Later that night, Plaintiff writes to mental health begging to be seen and asking that his worsening condition be given serious consideration and treatment.

40. As of December 9, 2025, no changes had been made to date to Plaintiff's treatment.

41. On December 13, 2025, Plaintiff attempted suicide by way of strangulation. The attempt was unsuccessful. Plaintiff subsequently made notice of this, but never received care or treatment regarding the incident.

## V.   Legal Claims:

1. Defendant "Private Employer of the Itasca County Jail Medical Staff" does not have sufficient training or policies guiding their staff on appropriate conduct towards persons in custody, especially pretrial detainees. This permitted and enabled Defendant "Paula" misconduct and provided no recourse for such. These are unconstitutional conditions, as under *Campbell v. McGruder*, 580 F.2d 521 (D.C. Cir. 1978), where they punish someone who is presumed innocent under pretrial detention.

2. Defendant "Nurse Practitioner", on multiple occasions, denied Plaintiff the right to informed consent in his medication and treatment, contrary to *Pabon v. Wright*, 459 F.3d 241 (2d Cir. 2006), where Plaintiff was frequently provided medication without any explanation, his requests for changes were treated with deliberate indifference despite worsening symptoms, such medications were continually administered to

Plaintiff despite their inadequacy, and Plaintiff was retaliated against for seeking relief also contrary to *Bell v. Wolfish*, 441 U.S. 520 (1979).

3. Defendant "Itasca County Jail Mental Health Specialist Ashley" ignored and treated with deliberate indifference Plaintiff's multiple outreaches concerning suicidal ideations and plans, which ignored and infringed upon his right to protection from self-harm, pursuant to *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996).

4. Defendants "Shawn Racine, Captain" and "Garret Smith, Lieutenant" denied Plaintiff access to evidentiary material, and material subject to demands for public data, of this case, and also denied Plaintiff the identities of other defendants which infringes his right to due process under the 14th Amendment of the United States Constitution.

## VI.   Requested Relief:

1. Plaintiff prays that this court grants judgment against Defendants as his rights have been violated.

2. Plaintiff prays that this court grants a preliminary and/or permanent injunction against Defendants, ordering the following:

   A. Defendant "Private Employer of Itasca County Jail Medical Staff", as a contracted agent of the government, properly train their staff and implement appropriate policies and reprimands.

   B. Defendant "Itasca County Jail Nurse Paula" cease verbal abuse towards inmates.

   C. Defendant "Itasca County Nurse Practitioner" fulfill Plaintiff's right to informed consent be discussing necessary information with inmates.

   D. Defendant "Itasca County Mental Health Specialist Ashley" and Defendant "Itasca County Jail Nurse Practitioner" meet their obligations to protect inmates from self-harm, and administer adequate care to those in need without causing undue harm and suffering.

   E. Ordering Defendants "Shawn Racine, Captain" and "Garret Smith, Lieutenant" to provide: a purposeful process for grievances which includes steps to escalate complaints up the chain of command; a means to access information needed to pursue cases such as this, including the identities of defendants and records of communication to inmates who are self-represented while incarcerated.

2. Plaintiff prays that this court awards punitive damages, due to the misconduct of staff and their violation of his constitutional rights, especially by medical professionals, in the amount of $7,000.00 against each of the Defendants, separately and severally.

3. Plaintiff prays this court award compensatory damages, due to Plaintiff being subjected to unwarranted and excessive suffering from untreated and/or wrongfully treated mental health symptoms and disorders, int he amount of $50,000.00 against each of the Defendants, jointly and severally.

4. Plaintiff prays this court award the recovery of any and all costs in this proceeding.

5. Plaintiff seeks a jury trial on all the issues, where such is appropriate under the law.

6. Plaintiff prays this court award any and all additional and further relief this court deems just, proper, equitable, or otherwise.

Signed and dated,

John Paul Raymond Bye
℅ Itasca County Jail
108 NE 5th St.
Grand Rapids, MN 55744

## VERIFICATION

I have ready the foregoing complaint and hereby merit that the matters therein are true, except for the alleged of which I believe to be true, and I certify under penalty of perjury that the foregoing is true and correct.

Signed and dated,

John Paul Raymond Bye
℅ Itasca County Jail
108 NE 5th St.
Grand Rapids, MN 55744

Executed at the Itasca County Jail, in Grand Rapids, Minnesota.